UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GARY M. DAVIS,

                    Petitioner,

v.                                   Case No. 3:10-cv-273-J-34TEM

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,
                    Respondents.

_____

## ORDER

### I. Status

    Petitioner Gary M. Davis initiated this action by filing a pro
se Petition for Writ of Habeas Corpus (Doc. #1) pursuant to 28
U.S.C. § 2254 on March 30, 2010.  Petitioner filed an Amended
Petition (Doc. #4) on April 27, 2010, in which he challenges a
state court (Duval County, Florida) judgment of conviction for
aggravated battery and felony battery.  Respondents have submitted
a memorandum in opposition to the Petition.  See Respondents'
Answer in Response to Order to Show Cause (Response) (Doc. #15)
with exhibits (Resp. Ex.) (Doc. #16).  On June 1, 2010, the Court

entered an Order to Show Cause and Notice to Petitioner (Doc. #8), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply.  Petitioner submitted a brief in reply on September 9, 2011.  See Petitioner's Amended Reply/Traverse (Amended Reply) (Doc. #24).  This case is ripe for review.

## II. Procedural History

On February 13, 2003, the State of Florida charged Davis with aggravated battery (count one), aggravated assault (count two), child abuse (count three), felony battery (count four), and attempted first degree murder (count five).  Resp. Ex. M at 90-91, Amended Information.  On June 23, 2003, Davis entered a plea of guilty to counts one and four.  Id. at 173-74, Plea of Guilty; 922-34, Transcript of the Plea Proceeding (Plea Tr.).  The trial court, on July 24, 2003, adjudicated Davis guilty of counts one and four and sentenced him, as a habitual violent felony offender, to a term of fifteen years of imprisonment (with a ten-year minimum mandatory sentence) followed by ten years of probation on count one and a term of ten years of imprisonment (with a ten-year minimum mandatory sentence) on count four, both terms to run concurrently. Id. at 177-82, Judgment, filed July 24, 2003; 935-70, Transcript of the Sentencing Proceeding (Sentencing Tr.).

On September 25, 2003, Petitioner filed a pro se motion to withdraw the plea.  Id. at 266.  The court denied his motion on

September 30, 2003. Id. at 267-68. Upon Petitioner's appeal, see id. at 278, the appellate court ordered Petitioner to show cause why his appeal should not be dismissed as untimely, see Resp. Ex. D, and Petitioner responded, see Resp. Ex. E.  On February 27, 2004, the appellate court dismissed Petitioner's appeal for lack of jurisdiction, stating: "Appellant has failed to demonstrate that the notice of appeal was placed into the hands of prison officials for mailing within 30 days of the date of the final order sought to be reviewed." Davis v. State, 867 So.2d 539 (Fla. 1st DCA 2004); Resp. Ex. F.

On or about July 22, 2004, Petitioner filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  Resp. Ex. M at 307-52.  He subsequently amended the motion on January 6, 2005.  Id. at 356-432.  In his requests for post conviction relief (Rule 3.850 motion), Petitioner asserted that counsel (Assistant Public Defender Debra Billard) was ineffective because she: knowingly allowed Davis to enter a guilty plea while he was legally incompetent (ground one); failed to investigate a potential defense, conceded Davis' guilt and coerced him into not going to trial (ground three); misled him into accepting an open plea before the court, by assuring him that the court would be lenient in sentencing him (ground four); failed to adequately investigate and prepare for the trial and sentencing proceedings (ground five); failed to request a suppression hearing

for the testimony of Lovely V. Hibbler (ground six); failed to depose Michael Maloney, a Naval Criminal Investigator (ground seven); and failed to move for a change of venue (ground eight). He also asserts that his plea was neither knowing nor voluntary because he was not served written notice of the State's intent to seek habitual violent felony offender status until the morning of the sentencing hearing, and the court did not establish that he understood the consequences of a habitual violent felony offender sentence (ground two), and that the trial court erred by imposing special conditions of probation and an unauthorized maximum punishment for count four and failing to receive mitigating testimony (ground nine).

The trial court held status hearings on the motions on June 14th and 29th. Id. at 1061-83, 971-1005. At the second status hearing, the State acknowledged that an evidentiary hearing would be appropriate on grounds three and seven, see id. at 973, and the trial court agreed to hold a hearing on those grounds, see id. at 974-75. As such, the trial court held an evidentiary hearing on grounds three and seven on August 11, 2005, see id. at 1010-60, Transcript of the Evidentiary Hearing (EH Tr.), and on February 9, 2006, denied Petitioner's requests for post-conviction relief, see id. at 626-43. Petitioner appealed the denial of his Rule 3.850 motions and filed briefs. Resp. Exs. O; Q. The State filed an Answer Brief. Resp. Ex. P. On April 22, 2009, the appellate court

4

affirmed the trial court's decision per curiam.  <u>Davis v. State</u>, 11 So.3d 357 (Fla. 1st DCA 2009); Resp. Ex. R.  The court also denied Petitioner's motion for rehearing on June 24, 2009, <u>see</u> <u>id</u>., and the mandate issued on July 10, 2009.  Resp. Ex. H.

On September 13, 2007, Petitioner filed a second <u>pro</u> <u>se</u> motion for post conviction relief.  Resp. Ex. T at 14-39.  In this request for post-conviction relief, he asserted that: the acceptance of a defective Information at the time he entered the guilty plea coupled with the trial court's lack of subject matter jurisdiction for purported crimes, stemming from a domestic dispute which occurred on a military installation with exclusive federal jurisdiction, renders the judgment null and void (ground one), and he was denied due process and equal protection of the law when the trial court denied his <u>pro</u> <u>se</u> motion to withdraw the plea after sentencing without an evidentiary hearing or appointment of counsel at a critical stage of his criminal proceeding (ground two).  The court, on March 6, 2008, denied the motion as untimely and successive.  <u>Id</u>. at 40-41.

Petitioner appealed and filed a brief.  Resp. Ex. U.  Initially, the State filed a notice that it would not file an answer brief.  Resp. Ex. V.  On September 2, 2008, the appellate court issued a show cause order, directing the State to show cause why the order denying the Rule 3.850 motion should not be reversed and remanded to the trial court to address the claim that the trial

court did not have subject matter jurisdiction because the offenses occurred at the Jacksonville Naval Air Station.  Resp. Ex. W. After the State responded, <u>see</u> Resp. Ex. X, the appellate court, on January 9, 2009, affirmed the summary denial of claim two, but reversed and remanded the summary denial of claim one and directed the trial court to either attach portions of the record conclusively refuting Petitioner's claim or to hold an evidentiary hearing to address the merits of that claim, <u>see</u> <u>Davis v. State</u>, 998 So.2d 1196 (Fla. 1st DCA 2009); Resp. Ex. Y.  The mandate issued on February 4, 2009.  Resp. Ex. Z.

On March 16, 2009, the State filed a request for judicial notice.  Resp. Ex. BB at 34-35.  The trial court, on April 15, 2009, took judicial notice of records of the Department of the Navy and the Executive Office of the Governor and summarily denied Petitioner's claim.  <u>Id</u>. at 58-61.  Petitioner appealed the denial, and the appellate court affirmed the trial court's decision per curiam on September 2, 2009.  <u>Davis v. State</u>, 16 So.3d 822 (Fla. 1st DCA 2009); Resp. Ex. CC.  The mandate issued on September 30, 2009.  Resp. Ex. FF.

On December 1, 2009, Petitioner filed a <u>pro</u> <u>se</u> Motion for Correction or Modification of Sentence pursuant to Florida Rule of Criminal Procedure 3.800(a).  Resp. Ex. GG.  The trial court denied the motion on December 17, 2009.  Resp. Ex. HH.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations.  See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

### V. Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d).  This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120

S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).

As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed de novo, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual

findings] by clear and convincing evidence."[1]
28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert. denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Harrington v. Richter, 131 S.Ct. 770, 785 (2011) (holding that section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).  Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v.

---

[1] "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith,

539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S.

668, 687 (1984)).

> To establish deficient performance, a
> person challenging a conviction must show that
> "counsel's representation fell below an
> objective standard of reasonableness."
> [Strickland,] 466 U.S. at 688, 104 S.Ct. 2052.
> A court considering a claim of ineffective
> assistance must apply a "strong presumption"
> that counsel's representation was within the
> "wide range" of reasonable professional
> assistance. Id., at 689, 104 S.Ct. 2052. The
> challenger's burden is to show "that counsel
> made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the
> defendant by the Sixth Amendment." Id., at
> 687, 104 S.Ct. 2052.
>
> With respect to prejudice, a challenger
> must demonstrate "a reasonable probability
> that, but for counsel's unprofessional errors,
> the result of the proceeding would have been
> different.[2] A reasonable probability is a
> probability sufficient to undermine confidence
> in the outcome." Id., at 694, 104 S.Ct. 2052.
> It is not enough "to show that the errors had
> some conceivable effect on the outcome of the
> proceeding." Id., at 693, 104 S.Ct. 2052.
> Counsel's errors must be "so serious as to
> deprive the defendant of a fair trial, a trial
> whose result is reliable." Id., at 687, 104
> S.Ct. 2052.

Harrington, 131 S.Ct. at 787-88.

---

[2] In the context of an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, Petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Ward</u>, 592 F.3d at 1163 (citation omitted).   "Surmounting <u>Strickland</u>'s high bar is never an easy task." <u>Harrington</u>, 131 S.Ct. at 788 (quoting <u>Padilla v. Kentucky</u>, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is accorded great deference.  "The standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' [<u>Strickland</u>], at 689, 104 S.Ct. 2052; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, <u>Knowles</u>[3], 556 U.S., at ----, 129 S.Ct. at 1420." <u>Harrington</u>, 131 S.Ct. at 788.

> The question "is not whether a federal court believes the state court's determination" under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S.Ct. 1933. And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. <u>See Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

---

[3] <u>Knowles v. Mirzayance</u>, 556 U.S. 111 (2009).

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner claims that the trial court did not have subject matter jurisdiction because the offenses occurred at the Jacksonville Naval Air Station.  Petitioner raised this claim in his second pro se motion for post conviction relief.  Resp. Ex. T at 17-22.  The State filed a request for judicial notice of the records of the Department of the Navy and the Executive Office of the Governor.  Resp. Ex. BB at 34-35.  Ultimately, the trial court denied Petitioner's claim on the merits, stating:

> This cause came before the Court pursuant to Mandate from the First District Court of Appeal dated February 4, 2009, wherein Claim I of the defendant's pro se Motion for Post Conviction Relief filed herein on September 17, 2007, was remanded to the trial court for further proceedings.
>
> The Court finds that Claim I of defendant's Motion for Post Conviction Relief is refuted by the attached request and acceptance of concurrent jurisdiction from the Department of the Navy and the Executive Office of the Governor, pursuant to Florida Statute 90.202(6) and (12).  Therefore, Claim

> I of the defendant's pro se Motion for Post
> Conviction Relief is hereby denied.

Id. at 58 (emphasis deleted).   Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.   Davis, 16 So.3d 822; Resp. Ex. CC.

Given the record in the instant action, the appellate court may have affirmed the denial of Petitioner's motion for post conviction relief on the merits.  If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA.   After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   Thus, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is still without merit.  The trial court's conclusion is fully supported by the record.  Accordingly,

Petitioner's ground one does not warrant federal habeas relief. <u>See</u> Response at 16-17; <u>See</u> Resp. Ex. BB at 35.

## B. Ground Two

As ground two, Petitioner claims that counsel was ineffective because she coerced him to enter a guilty plea while he was mentally incompetent. Petitioner raised this ineffectiveness claim in his first Rule 3.850 motion. Ultimately, the trial court denied the motion with respect to this issue, stating:

> In Ground I, the defendant asserts that he received ineffective assistance of counsel because his attorney entered these pleas on his behalf despite knowing he was "incompetent." The defendant refers to a letter appended to his motion from Dr. Ernest Miller, as supporting his claim. However, the letter upon which he relies actually refutes his claim. On page 4 of that letter, Dr. Miller opines that the defendant "is alert and lucid. He does not appear to hallucinate. He is not delusional."[4] Dr. Miller states that whatever symptoms the defendant had manifested previously, they were in remission and "Mr. Davis merits adjudication of competence to proceed and was not insane at the time of the alleged crime."[5]
>
> Additionally, Dr. Stephen Bloomfield also submitted a report containing his opinion that the defendant was fully competent to enter a plea. (Exhibit "A").[6] Further, the defendant

---

[4] <u>See</u> Resp. Ex. M at 332-36 (findings and conclusions of Dr. Ernest C. Miller, M.D., who performed a psychiatric evaluation upon Davis on June 18th and 20th, 2003, just before Davis entered a plea of guilty on June 23, 2003).

[5] <u>See</u> Resp. Ex. M at 336.

[6] <u>See</u> Resp. Ex. M at 639.

swore under oath to the judge who accepted his plea that he did not at that time or at any time in the past had he suffered from a mental illness.

> "THE COURT: Do you now or in the past have you ever suffered from a mental illness?
>
> THE DEFENDANT: Not that I know of." (Transcript of proceedings June 23, 2003 attached hereto as Exhibit "B").[7]

The judge, on the day of accepting the defendant's guilty plea further explored his history regarding mental health issues.

> "MS. BILLARD: Since that incident I have met with him numerous times and both Dr. Bloomfield and Dr. Miller have examined him, and we all believe that he is competent and does not currently meet the criteria.
>
> THE COURT: Alright. Mr. Davis, you have a clear understanding of where you are today and what you've done.
>
> THE DEFENDANT: Yes, Your Honor." (Transcript of proceedings June 23, 2003, attached hereto as Exhibit "C").[8]

Defense counsel was fully aware of the defendant's mental health history, obtained court-appointed experts to examine him for mental health issues and competency, and presented their findings to the Court. There is no ineffective assistance demonstrated by the record of her performance on this issue. The record herein conclusively demonstrates

---

[7] See Resp. Ex. M at 637.

[8] See Resp. Ex. M at 639-40.

15

> that the defendant is not entitled to relief
> on Ground 1.

Resp. Ex. M at 626-27.  Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Petitioner's motion for post conviction relief on the merits.  If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA.  After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is still without merit.  The record supports the trial court's conclusion.  At the June 23, 2003 plea hearing, defense counsel (Debra Billard) announced that Davis had authorized her to withdraw his previously entered plea of not

16

guilty and enter a plea of guilty to counts one and four: aggravated battery and felony battery. Plea Tr. at 925. The prosecutor stated: "[T]he maximum sentence if sentenced as [a] habitual violent felony offender which the State has filed notice [Davis] is eligible for would be 30 years as to Count 1 and ten years . . . as to Count IV." Id. Davis affirmed that he was not under the influence of alcohol or drugs and understood that he was pleading guilty to counts one and four. Id. at 926-27. The trial judge asked Davis if he suffers or had suffered from a mental illness, and Davis responded: "Not that I know of." Id. at 926. When the trial judge advised Davis that the maximum sentence he could receive would be thirty years of imprisonment for count one and ten years of imprisonment for count four, Davis affirmed that he understood. Id. at 926-27.

In his exchange with the state court judge, Davis affirmed that he had sufficient time to discuss the case with his counsel. Id. at 928. Davis also acknowledged that he was satisfied with his attorney's representation. Id. The trial judge then advised Davis of his rights to proceed to trial and call and confront witnesses and further advised him that, by pleading guilty, he would give up those rights. Id. at 928-29. Davis affirmed that he understood. Id. at 929.

Upon the judge's request, the State briefly recited the factual basis for the charges.

> Judge, had this case proceeded to trial[,] the State would have been prepared to show beyond a reasonable doubt that on November 18th at approximately 11:00 p.m. this defendant did attack and physically beat his wife at the time, her name Lovely Hibler. This occurred in Duval County, state of Florida, specifically the Naval Air Station Jacksonville Base. And he did use during the commission of said battery a deadly weapon, to wit, a knife, that would be contrary to the provisions of section 784.045 that would be as to Count I, Judge.
>
> And as to Count IV, the State would be prepared to prove the same facts in addition to which this defendant had previously been convicted [of] battery on September 27th, 1999 which establishes [the] additional element of this being a felony battery.

Id. at 929-30. When the judge asked Davis if he was pleading guilty to these charges because he was in fact guilty of them, he responded: "Yes, Your Honor." Id. at 930. Based on the questions asked and the responses given, the court found that Davis "has the intelligence to understand his constitutional rights, the plea he's entered, the plea form he's executed and these proceedings." Id. at 930-31. The court further found that: "the pleas have been entered freely and voluntarily and the defendant is not under the influence of any substances or suffers from any mental illness that would interfere with his understanding and appreciation of the plea he's entered and the consequences thereof." Id. at 931.

In discussing the upcoming sentencing hearing, the following colloquy transpired:

[DEFENSE COUNSEL]: Your Honor, as far as the mental health issues, I had Mr. Davis examined and there are some issues but I do believe -- and the doctors did find that he was competent to proceed, not insane at the time of the crime and does not meet the criteria.  He was Baker Acted the day of his arrest but –

THE COURT: Okay.  Other than that action, did he have any prior mental history before then?

THE DEFENDANT: I had some counselors.

[DEFENSE COUNSEL]: He's had some counseling.

THE COURT: Well tell me about that, Mr. Davis.

THE DEFENDANT: When I was in the military I suffered from stress from working with people with -- what's the word, when they die, terminal illnesses for a while.

THE COURT: So –

[DEFENSE COUNSEL]: He was a LPN.

THE COURT: So while you were in the military you sought counseling because of having to deal with that stressful situation.

THE DEFENDANT: Yes, sir.

THE COURT: All right.  And then he was Baker Acted at the time of his arrest?

[DEFENSE COUNSEL]: Yes, Your Honor, the Court may recall this is the one –

THE COURT: Right.

[DEFENSE COUNSEL]:  -- and he attempted to kill himself.

. . . .

19

> [DEFENSE COUNSEL]: Since that incident I have met with him numerous times and both Doctor Bloomfield and Doctor Miller have examined him and we all believe that he's competent and does not currently meet the criteria.
>
> THE COURT: All right.  Mr. Davis, you have a clear understanding of where you are today and what you've done?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: All right.  Well, I'll find the defendant is competent as I stated earlier and has a clear understanding of what he's doing in court this morning.  Of course, if you want to make them available to me I'll consider those reports in conjunction with the sentencing as well.

Id. at 932-34.

Given the record, counsel's performance was well within the wide range of professionally competent assistance.  Davis acknowledged that he was pleading guilty due to the truthfulness of the prosecutor's recitation.  Accordingly, the court found that Davis' guilty plea was freely, voluntarily, and knowingly entered and that he was competent to enter the plea since he had "a clear understanding of what he's doing in court . . . ."  Id. at 934.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.  At the plea hearing, Davis acknowledged that he pled guilty because he was in fact guilty of

the charges.  Additionally, the State's evidence against Davis was substantial, including the testimony of the victim,[9] Michael Hibbler (the victim's son), and the first responders to the scene.[10] Moreover, the State had turned over copies of letters from the victim to Davis with handwritten responses from Davis that were extremely damaging and inculpatory and that could arguably be considered as evidence of premeditation in support of the attempted murder charge.[11]  Moreover, if Davis had proceeded to trial, he would have faced a possible sentence of life imprisonment for attempted murder; but, instead, defense counsel negotiated a disposition for him where he received fifteen years with a ten-year minimum mandatory for aggravated battery.[12]  Therefore, Davis' ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

---

[9] See Resp. Ex. M at 781-823, Deposition of Lovely Hibbler.

[10] The victim's son Michael, who was twelve years old at the time of the November 18, 2002 incident, did not see the incident, but heard the arguing between his mother and Davis.  Resp. Ex. M, Deposition of Michael Hibbler at 883, 884.  Michael stated: "she said, [Davis] tried to stab her.  She was trying to hold him off from -- she was holding the knife trying to get him off . . . that's how she had those stab wounds on her hands."  Id. at 891. He affirmed that his mother appeared badly injured and described her injuries as: "a bunch of lumps" on her face and blood on her shirt and face as well as "stab wounds on her hand."  Id. at 887, 888.

[11] See EH Tr. at 1047-50.

[12] See EH Tr. at 1047.

21

## C. Ground Three

As ground three, Petitioner claims that counsel was ineffective because she failed to investigate the facts and evidence that was favorable to the defense and coerced Petitioner to plead guilty to the charges. Petitioner raised this ineffectiveness claim in his first Rule 3.850 motion. The trial judge held an evidentiary hearing on this claim. Ultimately, the trial court denied the motion with respect to this issue, stating:

> In Ground III, the defendant alleges that his counsel was ineffective for failing to subpoena and/or adequately investigate the emergency medical technicians and paramedics of the Naval Air Station who were the first responders on the scene of the occurrence that led to his arrest.
>
> Ms. Debra Billard, the Assistant Public Defender who represented the defendant, testified at the evidentiary hearing. She testified that she had been a criminal defense attorney in Jacksonville since 1991. She also testified that she had been assigned to the Repeat Offender Court here in Jacksonville for three separate tours during her career. She testified that she is very familiar with this type of case and the issues facing defendants and defense counsel in these situations. Ms. Billard testified that she did not coerce Mr. Davis into accepting any plea. She testified that she did, in fact, suggest that it might be in his best interest to accept the plea negotiations offered to him. She indicated that as an experienced criminal attorney she still believes that it absolutely was in his best interest to take this plea.[13]

---

[13] See EH Tr. at 1055-56.

Ms. Billard testified that she did subpoena and depose Ariel Ochoa, an EMT who was one of the first responders.[14] She testified that she also took the depositions of Edward Coyle, a paramedic on the scene, and Franklyn Knott, a firefighter. Ms. Billard further testified that all of those witnesses testified in their depositions that Ms. Hibbler came to the door bleeding and stumbled out carrying her eighteen month old child. They all testified that she told them she had been assaulted by Mr. Davis after an argument.[15] Ms. Billard agreed that none of the witnesses said that the victim stated to them that Mr. Davis tried to kill her. She also testified that the victim herself testified in her videotaped deposition that the defendant inflicted her wounds with the knife in question, and that her lacerations to her hands were inflicted when she tried to grab the knife while defending herself from the defendant.[16]

The defendant's main allegation in Ground III is that his counsel could have and should have brought out testimony that the victim at sometime admitted that her hands were cut in an attempt to grab the knife from him when he tried to commit suicide. This exists nowhere in the record other than in his own questions and statements. All of the first responders indicated that the defendant was bleeding

_____

[14] See Resp. Ex. M, Deposition of Ariel Ochoa, at 845-52 (stating he was the "transport responder," but never treated Lovely Hibbler; "We moved directly towards this other patient [(Davis)])."

[15] See Resp. Ex. M, Deposition of Edward Mathew Coyle, at 863 ("Firefighter Knott was treating the victim and that she had stated something, paraphrasing, she tried to keep [Davis] from getting stabbed and she was trying to get the knife away from him [and] she stated she had been bitten."); Deposition of Millard Brooks at 909-10 (stating he was with the victim about twenty seconds and did not even have time to start treating her); Deposition of Franklyn Knott at 915 ("She just said that she was assaulted by Mr. Davis, that they got into an argument.").

[16] See EH Tr. at 1046.

23

profusely and told them that the defendant had
assaulted her. None of the first responders
indicate anywhere in the record that they
asked any specific questions to her about how
individual cuts were inflicted, or about the
exact deployment of the knife during the
infliction of any particular wound. If they
did not question her, they certainly would
have had no answers from her to respond to
questions which the defendant complains his
lawyer did not ask.

       . . . .

    Ms. Billard further testified that the
defendant, had he gone to trial, would be
facing a possible life sentence for Attempted
Murder, and that she negotiated a disposition
for him wherein he received fifteen years with
a ten year minimum mandatory for Aggravated
Battery. She indicated that she felt this was
in his best interest because no testimony
contradicted the victim's testimony that the
wounds she received were all received while
trying to defend herself from an assault by
the defendant, and the State was in possession
of a number of letters written by the
defendant to the victim[,] in which he
vilified her with repeated obscenities and
indicated that he had an obsession that she
was cheating on him and planned to attack her
in some fashion. These letters also would have
revealed to a jury that he had gotten out of
jail shortly before this assault.

       . . . .

    In reference to the defendant's
allegations in the motion and in his
statements at the evidentiary hearing that he
had no wish to plead guilty and was forced to
plead guilty by his counsel, the defendant
gave the following answers, under oath, to the
Court during his plea inquiry:

      "THE COURT: Have you read this Plea
      of Guilty form?

THE DEFENDANT: Yes, I have, Your Honor.

THE COURT: Do you understand everything that's in it including the rights you give up when you plead guilty?

THE DEFENDANT: Yes.

THE COURT: Is that your signature on the last page?

THE DEFENDANT: Yes, it is, Your Honor.

THE COURT: Now have you had sufficient -- well, let me ask you this, anybody threatened, coerced or intimidated you in any way to get you to plead guilty?

THE DEFENDANT: No, Your Honor." (Transcript of proceedings June 23, 2003, pg. 6, attached hereto as Exhibit "C").

Concerning his relationship with his counsel, the defendant made the following statements under oath:

"THE COURT: Now, have you had sufficient time to discuss this case with your counsel, Miss Billard?

THE DEFENDANT: Yes, sir, I have.

THE COURT: Have you told her everything you know about your case?

THE DEFENDANT: Yes.

THE COURT: Has she answered all questions you have put to her about your case?

THE DEFENDANT: Yes, Your Honor.

25

THE COURT: At least to this point in the proceedings are you satisfied with the services she's rendered on your behalf?

THE DEFENDANT: Yes, Your Honor." (Transcript of proceedings June 23, 2003, pg. 7, attached hereto as Exhibit "D").

Regarding his belief that he was guilty, vice his present assertion that he was acting in self defense, the defendant made the following statement under oath to the Court:

"THE COURT: Alright, Mr. Davis, are you pleading guilty to these charges because you are in fact guilty of them?

THE DEFENDANT: Yes, Your Honor." (Transcript of proceedings June 23, 2003, pg. 9, attached hereto as Exhibit "E").

The defendant would have us believe his averments under oath in the motion and his statements during the evidentiary hearing. However, in order to find these statements true, we must concomitantly find that all the sworn statements that were previously given under oath by this defendant during all the previous court proceedings, have been perjury. His credibility is nonexistent.

Resp. Ex. M at 630-35.  Upon Petitioner's appeal, the appellate court affirmed the trial court's denial per curiam.

Given the record, the appellate court may have affirmed the denial of Petitioner's post-conviction motion on the merits.  If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA.  After a review of the

record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor were the adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, if the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit.  The record supports the trial court's findings.  In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.  The presumption that counsel's performance was reasonable is even stronger when, as in this case, counsel is an experienced criminal defense attorney.[17]  The inquiry is

---

[17] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger."  Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001); see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000).  Debra Billard testified that she had been a criminal defense attorney since 1991 and had been assigned to the Repeat Offender Court for "three different tours."  EH Tr. at 1055.  Thus, when Davis pled guilty in June 2003, Billard had been practicing criminal defense law for approximately twelve years.  She testified that she was very familiar with the issues facing defendants and defense attorneys because of her criminal defense experience in repeat offender court and due to her assignment in the special

"whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."   <u>Strickland</u>, 466 U.S. at 690.   "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005) (citations omitted).   Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose.  <u>Dingle v. Sec'y for Dept. of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted), <u>cert</u>. <u>denied</u>, 552 U.S. 990 (2007).   Petitioner has failed to carry this burden.

     After the evidentiary hearing, the state court resolved the credibility issue in favor of believing counsel's testimony over that of Petitioner Davis, stating in pertinent part:

> [T]he Court finds that Debra Billard is an experienced criminal defense attorney, who has been assigned to the special defense unit of the Public Defender's Office and the repeat offender division of this Court. She was frank, open, and cooperative in her demeanor while testifying. She is required by the ethics of her profession to be truthful before any tribunal, and could lose her right to practice law if she is found to be untruthful before a tribunal. She has no interest in the

_____

defense unit of the Public Defender's Office.  <u>Id</u>. at 1055-56.

> outcome of this cause. She has every
> motivation to be truthful, and no motivation
> to be untruthful. The defendant, on the other
> hand, is a twice-convicted felon who is trying
> to escape a lengthy prison sentence. The Court
> finds Ms. Billard's testimony to be credible
> and worthy of belief. The Court finds the
> defendant's allegations to be unworthy of
> belief.

Resp. Ex. M at 633.

The Court notes that credibility determinations are questions of fact. See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations). Here, Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Given the trial court's credibility determination, Petitioner's claim is wholly unsupported, and therefore must fail.

The United States Supreme Court has determined that "the representations of the defendant . . . [at a plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Moreover, "[a] reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: If a defendant understands the charges against him, understands the

29

consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir.) (en banc), cert. denied, 502 U.S. 835 (1991).   Thus, given the record, counsel's performance was within the wide range of professionally competent assistance.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."   Hill, 474 U.S. at 59.   At the plea hearing, Davis acknowledged that he pled guilty because he was in fact guilty of the charges.   Additionally, as previously stated, the State's evidence against him was substantial.   If Davis had proceeded to trial and a jury had found him guilty of attempted murder, he faced the possibility of life imprisonment.   Therefore, Davis' ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

### D. Ground Four

As ground four, Petitioner claims that counsel was ineffective because, prior to him signing the plea form, she failed to advise him of the State's intent to seek habitualization.   Petitioner raised this ineffectiveness claim in his first Rule 3.850 motion.

Ultimately, the trial court denied the motion with respect to this issue, stating:

> [T]he defendant asserts that he was unaware of the possibility of an Habitual Violent Felony Offender sentence until the date of his plea. The defendant claims that he was unaware of minimum mandatory provisions of this law until the date of his plea and was "mislead" regarding the possibility of a light sentence. The defendant was served with an Amended Habitual Violent Felony Offender Notice on the date of his plea. However, the original Notice was served upon him in February of 2003, some four months prior to entering his plea. The defendant attaches the Notice as Exhibit C to his motion. Dr. Miller's letter indicates that the defendant believed his potential exposure was life imprisonment.[18] The defendant also swore on the Plea Agreement form, which is executed under oath, that he had adequate opportunity to consider the negotiated and potential sentences. Also, the defendant's Exhibit B to his motion and Dr. Bloomfield's report each categorically refute the allegations of Grounds II and IV. Additionally, there is no legal requirement in Florida that the defendant receive earlier notice than that which he admits in his motion that he received. Grounds II and IV are without merit and the record conclusively demonstrates that the defendant is not entitled to relief thereon.

Resp. Ex. M at 627-28.  On Petitioner's appeal, the appellate court affirmed the denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Petitioner's motion for post conviction relief on the merits.  If the appellate court addressed

---

[18] See Resp. Ex. M at 335 ("He knows that he could serve a life sentence if convicted.").

the merits, Petitioner would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA.  After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim fails.  Indeed, the state court record affirmatively establishes that this claim is without merit.

Moreover, assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. As previously stated, the State's evidence against Davis was substantial.  Morever, if Davis had proceeded to trial, he would have faced a potential sentence of life imprisonment for attempted murder.  Instead, by entering the guilty plea, the trial court

sentenced him to fifteen years (with a ten-year minimum mandatory) for aggravated battery (count one). Therefore, Davis' ineffectiveness claim is without merit since he has not shown prejudice.[19]

### E. Grounds Five and Seven Through Twelve

Petitioner voluntarily waives grounds five, seven, eight, nine, ten, eleven, and twelve. See Amended Reply at 24-25.

### F. Ground Six

As ground six, Petitioner claims that counsel was ineffective because she failed to depose Michael Maloney. Petitioner raised this ineffectiveness claim in his first Rule 3.850 motion. The trial judge held an evidentiary hearing on this claim. Ultimately, the trial court denied the motion with respect to this issue, stating:

> [T]he defendant alleges ineffective assistance of counsel for failure to investigate and depose Michael Maloney, the NCIS agent who interviewed several of the witnesses in this case. Ms. Billard testified that, while she did obtain Mr. Maloney's report, he failed to respond to subpoenas on several occasions, due to being out of the country participating in the war in Iraq, as were several other of the participants, including the victim. She testified that the most important part of Mr. Maloney's report was his recording of what Mr.

---

[19] See Ward, 592 F.3d at 1163 (stating that both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, and, therefore, a court need not address the performance prong if petitioner cannot meet the prejudice prong). prong).ice-versa." (citation omitted).

> Ochoa had observed. She testified that she did
> depose Mr. Ochoa.

Resp. Ex. M at 632.  Upon Petitioner's appeal, the appellate court affirmed the trial court's denial per curiam.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions.  Thus, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications.  After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Petitioner's ineffectiveness claim, nevertheless, is without merit.  The trial court's conclusion is fully supported by the record.  At the evidentiary hearing, the following colloquy transpired:

> THE COURT: Okay.  You have any questions
> you want to ask [defense counsel] about ground
> seven?  That would be the testimony of Michael
> Maloney, first responder.
>
> THE DEFENDANT: Not that I can think of,
> Your Honor.

THE COURT: Okay.  All right.  Let me ask you, Miss Billard, did you ever depose Michael Maloney?

[DEFENSE COUNSEL]: No, Your Honor, I think he was out of the country.  We tried to subpoena him several times.  I do have this report.  And his report was basically writing down what Mr. Ochoa had observed, and so I did depose Mr. Ochoa.

. . . .

[PROSECUTOR]: For the record before we get interrupted again, Mr. Maloney was not a first responder, Mr. Maloney was not an EMT or fire fighter.  Mr. Maloney is a NCIS agent who had part of the responsibility for interviewing various persons.[20]  Ariel Ochoa was one of the first responders.

THE COURT: What was he?

[PROSECUTOR]: I believe a nurse on the base, judge, medical.

THE DEFENDANT: He's not a nurse, he said he's just an EMT.  He said he was the driver of the vehicle.  Can I go into his deposition?

THE COURT: He's a medical guy.

. . . .

THE COURT: It would be very shocking if a NCIS agent was a first responder, would mean you had a very mixed-up dispatcher.

. . . .

[DEFENSE COUNSEL]: As I recall [the victim] was out in the hall.  I do have my notes from Ochoa.  They had to kick down the door to get in.  What Ochoa said about Lovely Hibler, my only contact with the female I saw

---

[20] See Resp. Ex. M at 824-38, Deposition of Matt Borgert.

> the injuries one to two hours later, pretty
> bad bruises on face, looked like she was
> involved in a fight had swollen eyes, I didn't
> really speak to her.[21]  So as far as –

EH Tr. at 1041, 1042, 1044.  Thus, given the record, counsel's performance was within the wide range of professionally competent assistance.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial, given the State's substantial evidence against him and the possibility of life imprisonment if a jury found him guilty of attempted murder.  Therefore, Davis' ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## VIII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted.  This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district

---

[21] See Resp. Ex. M at 845-52, Deposition of Ariel Ochoa.

36

court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Amended Petition (Doc. #4) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.    If Petitioner appeals the denial of the Amended Petition, the Court denies a certificate of appealability.   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of November, 2012.


**MARCIA MORALES HOWARD**
United States District Judge



sc 8/2
c:
Gary M. Davis
Ass't Attorney General (Heller)